UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------
UNITED STATES OF AMERICA,

         -vs-                              13-CR-134

BRIAN CHRISTOPHER YOUNG,

               Defendant.
-------------------------------------


         Proceedings held before the

    Honorable William M. Skretny, Buffalo

    Courtroom, Robert H. Jackson Courthouse,

    2 Niagara Square, Buffalo, New York, on

    June 17, 2015.


    APPEARANCES:

    GEORGE C. BURGASSER,
    Assistant United States Attorney,
    Appearing for the United States.

    LESLIE SCOTT,
    Assistant Federal Public Defender.
    Appearing for Defendant.

    Michelle L. McLaughlin, RPR,
    Official Reporter,
    U.S.D.C. W.D.N.Y.

1                    THE CLERK:  Criminal case 2013-134S,

2      United States versus Brian Christopher Young.

3                    THE COURT:  We did issue a missing

4      person's report for you, Mr. Burgasser.

5                    MR. BURGASSER:  I wasn't far.

6                    THE COURT:  I'm going to withdraw it now.

7                    MR. BURGASSER:  Thank you, your Honor.

8                    THE COURT:  All right.  Mr. Young, good

9      afternoon.

10                    THE DEFENDANT:  Good afternoon.

11                    THE COURT:  Miss Scott --

12                    MS. SCOTT:  Good afternoon.

13                    THE COURT:  Mr. Burgasser, good afternoon.

14                    MR. BURGASSER:  Good afternoon, your

15      Honor.

16                    THE COURT:  All right.  This matter is set

17      for sentencing.  I am ready to proceed with

18      sentencing.  I have the report of Miss Blackman, I

19      think this is yours, revised as of May 22nd.

20          And, Miss Scott, you received that report, I

21      take it?

22                    MS. SCOTT:  Yes, your Honor.

23                    THE COURT:  Okay.  I guess it's

24      technically Miss Ferraro's, and you're here for

25      her, is that right?

1          PROBATION OFFICER:  That's correct, your

2     Honor.

3          THE COURT:  Okay.  And you discussed it

4     with Mr. Young?

5          MS. SCOTT:  Yes.

6          THE COURT:  All right.  I'm going to seal

7     the report.  And I am, however, relying on the

8     information in the report.  And I think as you

9     know, Mr. Young, I'm going to set out a few things

10    before I hear from you, and that creates what's

11    known as the record.  So, that will serve you in

12    the event that you choose to take an appeal.

13    Anybody that looks at what took place here will

14    have an exact account of what happened or didn't,

15    depending on what your arguments are.  But, in

16    order to take an appeal, you must be appeal

17    eligible, and to get you there, either your

18    attorney or you has to file a Notice of Appeal

19    within that 14-day period.  Do you understand?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Okay.  You're entitled to an

22    attorney until your case is complete in all

23    respects.  You can hire one at your own expense,

24    otherwise, as long as you continue to qualify, you

25    get the benefit of either an assigned attorney or

4

1    sometimes it's called an appointed attorney, but

2    certainly Miss Scott from the Federal Public

3    Defender's Office will well serve your interests in

4    that regard.  You always retain the right to

5    represent yourself.  Frankly, rarely is that

6    recommended, and I think for what are usually

7    obvious reasons.  If you're not lawyer trained,

8    it's difficult to handle complex matters when it

9    relates to, whether it's a plea or sentence or

10   trial.  Almost always it's better to have an

11   attorney assist, because you, as an individual,

12   would be held to attorney standards, and that can

13   be a little dicey.  Do you understand?

14            THE DEFENDANT:  Yes, sir.

15            THE COURT:  Okay.  You know, I've

16   carefully considered your case.  I am going to rely

17   on paragraphs 9 through 15, which are on pages 4

18   and 5 of the presentence report relative to support

19   for the plea and support for the sentence.  But I

20   want to hear you and Miss Scott out first.  She's

21   made some requests on your behalf, and I'm going to

22   address those as well.

23      And your plea was back on February 9th to the

24   charge of possession with intent to distribute

25   cocaine, which is a class C felony.  I will be

1    including in my calculations under the guidelines

2    giving you an additional one level for acceptance

3    of responsibility, and that's the government's

4    request here, right?

5             MR. BURGASSER:  That is correct, your

6    Honor.

7             THE COURT:  Okay.  And what I do have that

8    I want to address before going too much further is,

9    Miss Scott, your motion for a one-category

10   horizontal departure in criminal history, and

11   that's based on your argument that Mr. Young's

12   criminal history category of six, which is mandated

13   by -- and that's the highest of six numbers by the

14   career offender status -- overstates the

15   seriousness of your criminal past, Mr. Young, and

16   the likelihood that you may or would recidivate.

17       And under the authority of Section 4A1.3 and

18   the cases like the Mishoe case, which is

19   M-I-S-H-O-E, of the Second Circuit in 2009, I am

20   aware that I may lower your criminal history

21   category, even one that's driven by career offender

22   guidelines, if I find that if the number, the

23   calculation, does not adequately reflect the

24   seriousness of a defendant's criminal past or

25   likelihood that a defendant will commit other

1    crimes.

2         Now, I've looked at the policy arguments as

3    well in conjunction with the motion, and, you know,

4    I know that the career guideline has been

5    criticized and criticism has been leveled against

6    it really from all levels and all sides really.

7    But when I look at your case that's before me, and

8    I consider those what I call Mishoe factors, which

9    include, one, the amount of drugs involved in prior

10   offenses; two, a defendant's, like yours, role in

11   prior offenses; three, sentences previously

12   imposed; and four, the amount of time that a

13   defendant previously served compared to the

14   sentencing range called for in the criminal history

15   category 6 range, in my view, I don't have any

16   trouble concluding that the criminal history

17   category of six is adequate and does not overstate

18   the seriousness of your criminal past or the

19   likelihood that you may likely reoffend.

20        First, let me explain, as the parties agree,

21   you are properly considered a career offender

22   because you were over 18 years old at the time of

23   the current crime.  This crime is a controlled

24   substance offense involving 9 ounces of cocaine,

25   and you had at least two prior felony convictions

1    of either crimes of violence or controlled

2    substances offenses.  Second, your criminal history

3    is especially serious, including both violent and

4    drug related crimes.  And as you know,

5    historically, from your conduct, that led to the

6    deaths of two people.  At the age of 16 -- and I

7    know that's a while ago now.  And, you know, at

8    least I think you're still 40 years old, right?

9               THE DEFENDANT:  Yes, sir.

10               THE COURT:  You know, at age 16 you hurled

11    a table leg at an individual in the middle of a

12    brawl at a basketball game, impaling the victim

13    through his back, and you ultimately pled guilty to

14    attempted manslaughter in the second degree and

15    were sentenced to 28 months to seven years

16    incarceration.  And I think you served about six

17    years and two months for that offense.  That's a

18    lot of time, I know.

19        At age 19 you were charged with murder in the

20    second degree after you and your brother and a

21    third person attacked an individual with a stick

22    and beat him about his head and body and ultimately

23    stabbed him in the chest, killing him.  You were

24    convicted after trial of assault in the second

25    degree, and you were sentenced to 28 months to

1    seven years incarceration.  I think -- I know you

2    served the full seven-year term.

3        And then finally at the age of 31 you were

4    twice convicted of criminal possession of drugs

5    with intent to sell.  You committed those offenses

6    while on parole, stemming from your earlier violent

7    crimes convictions.  You were sentenced to a

8    concurrent sentence of six years' incarceration,

9    and you served three years and six months of that.

10       In my view, this amounts to an extremely

11   serious criminal history.  You know, I know that

12   two of the convictions occurred when you were a

13   teenager, but I nonetheless find that criminal

14   history category of six, dictated by the career

15   offender guideline, does not overstate the

16   seriousness of your criminal past or the likelihood

17   that you will recidivate.

18       Each time defendant was -- you were convicted

19   of a serious crime and sentenced to time in prison,

20   you did come out and you reoffended, and I'm taking

21   that into consideration.  And you committed the

22   instant offense just six months after being

23   discharged from state parole supervision.  You have

24   spent a considerable amount of time incarcerated

25   pursuant to the state sentences, and while the

1    federal sentence you now face is significant, it is

2    precisely the type of crime that makes you a

3    recidivist offender at which the career offender

4    guidelines' harsh punishment is targeted.

5         Consequently, your motion for a horizontal

6    departure from a criminal history category 6 to a

7    criminal history category 5 is denied.  And the

8    proper numbers are 29 for the crime, criminal

9    history category 6, guideline range of 151 to 188

10   months.  And I will proceed on that basis.

11        I mean, that's not a pretty picture, as you

12   know.  And I know, you know, a lot of years have

13   lapsed from those early serious matters of violence

14   and involving the death of two individuals.  But,

15   you know, a lot of drugs are involved here.  A lot

16   of money's involved here.  You know, when -- I

17   mean, going back to your early age, I mean, your

18   mother had a heck of a time with you and there were

19   a number of PINS petitions that were filed, and

20   we've got to deal with a sentence that's fair to

21   the public and to society as well as to you.  I'll

22   try to do that in the end result, but, you know,

23   we're not talking about a situation that can just

24   be overlooked.  It requires a sentence that sends

25   the message that, I mean, you're never too old to

1   learn, but you have to be punished and held

2   accountable.  Punishment is not always the answer

3   as far as jail time is concerned.  But, you know,

4   there has to be a meaningful sentence for somebody

5   that knows the ropes.  You have to be held

6   accountable.

7        And I'm going to, I guess, lateral to you at

8   this point, Miss Scott, and we'll see where we come

9   out.

10            MS. SCOTT:  Yes, your Honor.  Thank you.

11   And I do understand the Court's concerns with

12   respect to Mr. Young's criminal history.

13            THE COURT:  And I know I interrupted, but

14   I did read all the letters and I read your

15   submission as well.  So, I just wanted you to know

16   that.

17            MS. SCOTT:  Thank you, Judge.  I knew you

18   did that.  And I just want to start I think by

19   saying that with respect to the horizontal motion,

20   I'm not going to make any arguments.  I understand

21   the Court's ruling completely.  I just want to make

22   it clear that nothing that was said in that motion

23   was to minimize or shy away at all from the very

24   serious nature of Mr. Young's criminal history.

25   That cannot be overlooked, nor should it be

1   overlooked.

2       My arguments were geared towards the person who

3   I've come to know in the past two years.  He was

4   arrested in April of 2013, and now we're here over

5   two years later.  And the person that I've come to

6   know is someone very different from a person who

7   could commit those types of offenses.  And so all

8   that I could do is chalk it up to youth

9   impulsiveness.  Obviously it's -- regardless of

10  what was going on in his life at that time that

11  would allow those things to happen, it doesn't make

12  it okay.  But the Brian Young that I've come to

13  know is somebody who is very gentle, very calm,

14  always very respectful to me, very sincere in our

15  conversations, someone who is soft spoken, devoted

16  to his religion.  He converted to Muslim, and he

17  practices that at the jail.  And that's something

18  that is very important to him, and it comes up

19  frequently in our conversations.  And he talks a

20  lot about family, in particular his twin brother,

21  who is here today in the courtroom to show his

22  support for Brian.

23      And so I've even had trouble in my

24  representation of Mr. Young in really understanding

25  what was going on in his life that led him to

1    commit those types of crimes, and seeing that the

2    person that I've come to know is just not that

3    individual.  I think enough time has gone by, and

4    he's matured and grown up enough that the Court

5    need not worry about him committing further crimes

6    of violence, but concerns about the recidivism with

7    respect to the drugs and dealing drugs, it's a real

8    concern, and I understand that, so I'd like to

9    address that for a moment.

10        I talked a lot in my sentencing memo, so I'm

11   not going to reiterate what I said, but I think the

12   points that I'd like to make today and emphasize

13   are really what I view as Mr. Young's attempts when

14   he was released in October of 2010 I believe --

15   yeah, 2010 from state prison to turn his life

16   around.  And he obviously didn't have significant

17   time to do so, because he was rearrested.  But for

18   two years he was making some positive strides.  So,

19   for example, when he was released from state prison

20   in 2010, he was able to find and maintain

21   employment.  He worked at Tyson Foods, and he

22   worked there for approximately eight months before

23   being laid off.  After that, he was employed at

24   Readers Direct, and he was there for nearly one

25   year.  Again, unfortunately, he was laid off when

1    the company downsized.  It wasn't until he lost

2    that job in October of 2012 that Mr. Young made the

3    decision to resort back to the way that he knew how

4    to make money the easiest.  And unfortunately, it's

5    a story that this Court hears all too often.

6        You grow up in the streets.  His first

7    experience in dealing drugs was at the age of 13.

8    It's a way to make money quickly and easily.  It's

9    risky, and he knew that.  But at the time he felt

10   that his financial situation was desperate and dire

11   enough that it was worth the risk.  I mean, there's

12   really no deeper explanation than that.  As the

13   Court knows, his mother had passed away

14   approximately a year prior, and he and his two

15   brothers were charged with the responsibility for

16   raising his young minor niece and nephew.

17       He was living with the niece and nephew.  Prior

18   to his mother's passing, she was their primary

19   caretaker.  So in taking on this role, Mr. Young

20   felt, you know, that it was incumbent upon him to

21   assist them financially.  And that was the way that

22   he did it, and he did it because he was not able to

23   find a job.  I think he told me that he submitted

24   approximately a dozen resumes through a temporary

25   employment agency to various companies, with no

1  luck.  It doesn't make it okay.  Unfortunately

2  though, it was what he felt he needed to do at the

3  time.  And he did, and that's why he's here today,

4  Judge.

5      I will point out that the letters that this

6  Court received and Mr. Young's letter show a

7  different side, I think, to the person that you

8  might otherwise think stands before you from

9  reading the presentence report.  Everyone who chose

10  to write letters on Brian's behalf referred to him

11  as somebody who's caring, who's helpful.  One of

12  Brian's friends talked about how he assisted her

13  financially when she was down on her luck.  She

14  lived with five children.  She didn't have a place

15  to stay.  They were cramped in with her mother.

16  Brian assisted her by giving her money, and she

17  used that money to eventually rent out an

18  apartment, and he didn't expect any payment in

19  return.

20      Another thing that's always been important to

21  Brian is his involvement in the community.  He's

22  participated in community events, basketball games.

23  He worked with an organization that provided DJ

24  equipment and services to local youths for events

25  such as basketball games and picnics, so that's

1    something he's always prided himself on.

2         He was making strides, I think, and turning

3    things around and doing the best that he could for

4    somebody who had spent a substantial part of his

5    adult life in prison.  And that's always going to

6    be a barrier, and he knows that that's going to be

7    a barrier to his success.  But the fact that he was

8    able to come out and maintain employment, move in

9    with his family, reconnect with his two brothers,

10   reconnect with his niece and nephew, provide sort

11   of a father figure role for them, and then turn

12   into somebody that other people in the community

13   were able to look up to and to learn from, I think

14   that that does say a lot about the potential that

15   he has.

16        In his time that he served the past two years

17   at NEOCC he's tried to be productive, Judge.  He's

18   participated in self-improvement courses, he's

19   participated in substance abuse classes.  He

20   doesn't want this time to be wasteful.  When he was

21   incarcerated in state prison, again, productive.

22   He earned his GED.  He's an intelligent man.  He's

23   well spoken.  His letter was well written and

24   eloquent, so I do believe he has potential.

25        Lastly, Mr. Young would like for me to ask the

1    Court to recommend that he serve his time at FCI

2    McKean in Pennsylvania.  The reason for that, it's

3    a medium-security facility which is where he served

4    his time previously.  The reason for that, Judge,

5    is he's very interested in learning the

6    construction trade, and there's an apprenticeship

7    program there for building and maintenance repair

8    and housing repair.

9        So, he plans to be productive and use this

10   time.  It's going to be a long time, no matter

11   what, to better himself, so that he doesn't

12   continue down this bad path that he talked about in

13   his letter.  He really would like to honestly make

14   changes and not serve out the rest of his life in

15   prison.  He is a relatively young man at 40 years

16   old.  He does have a long life ahead of him

17   potentially.  But this is really going to have to

18   be the turning point.  Once he's released, if he's

19   arrested again, I think he knows that he at that

20   point will be an old man serving out the end of his

21   life and not just the beginning of his life in

22   prison.

23       Lastly, I'd ask that the Court consider

24   recommending the drug treatment program, the RDAP

25   program.  He has participated in drug treatment in

1    the past.  It's been helpful at times.  He has

2    stated that he has a marijuana problem and would

3    like to address that.  Thank you.

4           THE COURT:  All right.  Thank you,

5    Miss Scott.  Mr. Young.

6           THE DEFENDANT:  Yes, your Honor.  First of

7    all, I'm nervous, so bear with me.

8           THE COURT:  Sure.

9           THE DEFENDANT:  Leslie, thank you for the

10   kind words.

11      Your Honor, I'm a work in progress.  I'm not

12   going to sit here and say that I totally changed,

13   you know what I'm saying?  I did change some of my

14   thinking, a lot of my ways.  Again, I'm a work in

15   progress.  I'm a family man.  I made a mistake.  I

16   can't cover that.  I know what I was doing.  I knew

17   I shouldn't have did it, but I did it anyway.

18   There's no excuse for that.  I want to apologize to

19   the Court and to my family for my selfish actions

20   because I shouldn't have been doing this.

21      I'm a God-fearing man.  You know, this morning

22   I prayed.  I had a long prayer before I came here.

23   I was real nervous.  I'm still nervous.  I just ask

24   God to put me in the mercy of the Court.  I just

25   want what's justice.  If the Court can be lenient,

1    so be it.  If it can't, I have to respect it.  But

2    I'm sorry for my actions.  I didn't mean them.  I

3    won't do it again.  I know for that part of me I

4    won't do it again.  I wouldn't do drugs again.  I

5    won't sell them again.  I'm too old.  I'm 40 years

6    old.  I don't know how much time.  I won't do it

7    again.  I just ask for leniency.  Thank you.

8              THE COURT:  No matter how you look at it,

9    it's just not worth it, right?

10             THE DEFENDANT:  No, not at all.

11             THE COURT:  All right.  As your attorney

12   said, your letter was an impressive letter.  I

13   mean, you're a God-fearing man.  You know that in a

14   different context everybody gets religion at the

15   time of sentencing, at least almost everybody,

16   right?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  So it's a question of weeding

19   the sincere out from those that are trying to pull

20   the wool over your eyes, and, you know, it's a

21   tough job sometimes.  But, you know, I want to hear

22   from the prosecutor, and then I need to speak with

23   Miss Blackman for a moment, and then I'll come back

24   out and I'll complete the sentence.  Miss Blackman

25   is from the probation office.

1        Mr. Burgasser, what do you think here?

2              MR. BURGASSER:  Your Honor, I don't have a

3    whole lot to say.  I would like to point out that

4    as part of the plea agreement that was done by the

5    defense attorney, was done quite well.  She also

6    had us not file an 851, which would have made him

7    two points higher, which would have been a 30-year

8    maximum.  We are looking at 151 to 188 as a

9    criminal history six.  I don't think that the low

10   end of 151 would be unfair or unjust in this

11   particular matter.  I don't know what the Court's

12   thinking exactly.  But, overall, you know, he, you

13   know, accepted responsibility and I agree that his

14   letter was quite eloquent.

15             THE COURT:  Okay.  All right.  I mean,

16   that's -- at the low end, we're talking 12 and a

17   half years.  And, you know, I mean rightly so, you

18   should be nervous, and, you know, part of what I

19   have to look at is uniformity of sentence.  I have

20   to look at who the person is today, as well as who

21   the person was at the time of the crime, and I -- a

22   lot of times there is a big difference.  You spent,

23   what, 26 months in jail plus already?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  But you spent a lot of time

1    previously in jail too.  And, you know, that --

2    that cuts against the grain, so to speak, in terms

3    of, I mean, do you get it?  And, you know, maybe

4    when you turn 40 it's time to get it.

5        But let me -- Miss Blackman, I know this is not

6    your full case, but you're familiar with Miss

7    Ferraro's impressions?

8            PROBATION OFFICER:  I am, your Honor.

9            THE COURT:  Okay.  Let's talk for just a

10   minute.

11           (Off the record discussion.)

12           THE COURT:  Okay.  As Miss Scott always

13   says, a sentence should be sufficient and not

14   greater than necessary, right?  And I looked at

15   what you did.  And I probably would have lost sight

16   of it when you were out the last time and when you

17   worked at Tyson and when you worked at -- what was

18   the other place?

19           MS. SCOTT:  Readers Direct.

20           THE COURT:  I mean, not everybody does

21   that, and it's particularly difficult when you have

22   the kind of record that you have to get that kind

23   of employment.  You know, and I think about when is

24   it that you might turn your life around.  And I

25   think some people never get it, frankly.  I think

1    Miss Scott's impressions of you and her experience

2    with you over the last couple of years are an

3    indicator maybe that while 40 is not that old, 40

4    is old.  It may be a new age something, right?  I

5    don't know.  People keep on telling me I'm a new

6    age something, and I never really know what that

7    means.  But I don't face 12 and a half years at the

8    low end.  And, you know, there's lot of reasons why

9    you do, and most of it is because you made the

10   wrong choices when you had to make a decision.

11   And, you know, it could be because you were

12   immature, it could be for a lot of reasons.  I

13   don't know what really lies ahead, and we talked

14   about getting religion.  But I think when you talk

15   about that kind of time, it's -- given where I

16   think you are in your head and looking ahead beyond

17   that, that guideline range is too high, but you do

18   have to be held accountable.  And it's the big

19   picture that I have to take into account, the good

20   and the bad.  In balance, the time I'm going to

21   give you is substantial time, but it's

22   substantially less than the guideline range.  It's

23   going to be ten years.

24       And I think under the circumstances, given your

25   criminal history, that's a fair sentence.  You

1      know, you're going to get out and you're still

2      going to be in my view, relatively -- at a relative

3      age where you still have some good years left, and

4      I'm going to recommend McKean.  I hope you get into

5      that construction program.  I'll recommend the drug

6      treatment program, the 500-hour program I guess it

7      is.  I'll do all of that at your request.

8          You know, I think the good outweighs the bad

9      here.  I think you can make something of your life.

10     If you don't, there's going to be nothing left of

11     your life if you come back here, especially in

12     federal court.  Do you understand where I'm coming

13     from?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Fair enough?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  All right.  That will be your

18     sentence.  As far as supervised release is

19     concerned, three years.  You have to obey all the

20     standard conditions.  You cannot commit any other

21     crimes, federal, state, or local.  You cannot

22     possess a firearm, dangerous device, or ammunition.

23     You cannot possess drugs.  You will -- you cannot

24     be discharged from any treatment program without

25     the expressed approval of your supervision officer.

1    You will be subject to a search condition of your

2    person, property, premises, vehicle during the full

3    period of your supervised release.

4        You have to pay a 100-dollar special

5    assessment.  If you don't have the funds now, you

6    can work that off through the inmate financial

7    responsibility program.

8        You will be forfeiting your interest in the

9    property that's in Section 7 of your plea

10   agreement.  That will be incorporated into the

11   judgment of conviction.

12       You know, I think the good things are

13   sufficient in this case and more than probably one

14   would expect, given some of the background that

15   you've been involved in, and I think that justifies

16   a sentence that is well below the guideline range.

17   The rest is going to be up to you, okay?

18            THE DEFENDANT:  Yes, sir.

19            THE COURT:  Okay.  Anything to dismiss?

20            MR. BURGASSER:  Nothing to dismiss.

21            THE COURT:  Anything I missed,

22   Miss Blackman?

23            PROBATION OFFICER:  No, your Honor.  Well,

24   actually are we dismissing the complaint?

25            THE COURT:  Yeah.

1          MR. BURGASSER:  Yes, that basically is

2     already --

3          PROBATION OFFICER:  Thank you.

4          THE COURT:  Anything else?  Miss Scott,

5     anything?

6          MS. SCOTT:  Nothing further.  Thank you,

7     Judge.

8          THE DEFENDANT:  Thank you.

9          THE COURT:  Okay.  Thank you.

10         *       *       *       *       *       *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATION

2

3                  I certify that the foregoing is a

4          Correct transcription of the proceedings

5          Recorded by me in this matter.

6

7

8                              s/Michelle L. McLaughlin
                               Michelle L. McLaughlin, RPR
9                                   Official Reporter
                                 U.S.D.C., W.D.N.Y.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25